# HARTFORD ACCIDENT AND INDEMNITY COMPANY ET AL. *v.* ACE AMERICAN REINSURANCE COMPANY ET AL.
## (SC 17329)

Borden, Norcott, Katz, Palmer and Zarella, Js.

Argued October 17, 2005—officially released July 25, 2006

*Robert N. Hermes*, pro hac vice, with whom were *Stuart D. Rosen* and, on the brief, *James I. Rubin*, pro hac vice, *Catherine E. Lamsens*, pro hac vice, and *Michael C. D'Agostino*, for the appellants (plaintiffs).

*James F. Sullivan*, with whom were *Dale T. Miller*, pro hac vice, and, on the brief, *Jack G. Steigelfest*, for the appellees (defendant underwriters of Lloyd's of London et al.).

*Opinion*

PALMER, J. The sole issue raised by this certified appeal is whether an order denying a motion for pre-pleading security pursuant to General Statutes § 38a-27 (a)[1] is an appealable final judgment. The trial court

[1] General Statutes § 38a-27 provides: "(a) Before any unauthorized person or insurer files or causes to be filed any pleading in any court action or proceeding or in any administrative proceeding before the commissioner instituted against the person or insurer by service made in accordance with the provisions of section 38a-25, section 38a-26 or section 38a-273, the person or insurer shall either: (1) Deposit with the clerk of the court in which the action or proceeding is pending, or with the commissioner in administrative proceedings before the commissioner, cash or securities or a bond with good and sufficient sureties to be approved by the court or the commissioner, in an amount to be fixed by the court or the commissioner sufficient to secure the payment of any final judgment which may be rendered in the action or proceeding, provided the court or the commissioner in administrative proceedings may in its or his discretion make an order dispensing with the deposit or bond where the insurer shows to the satisfaction of the court or the commissioner that it maintains in this state funds or securities, in trust or otherwise, sufficient and available to satisfy any final judgment which may be entered in the action or proceeding; or (2) procure proper authorization to do an insurance business in this state.

denied the motion of the plaintiffs, Hartford Accident and Indemnity Company and thirteen of its affiliates,[2] to compel the defendants, various unauthorized reinsurance companies[3] doing business in the state of Connecticut,[4] to post prepleading security in accordance with § 38a-27 (a). The plaintiffs appealed from the order of the trial court to the Appellate Court, which dismissed the appeal for lack of a final judgment, and we granted the plaintiffs' petition for certification to appeal from the Appellate Court's judgment dismissing their appeal.

"(b) The court in any action or proceeding in which service is made as provided in section 38a-25, section 38a-26 and section 38a-273, or the commissioner in any administrative proceeding in which service is made as provided in section 38a-273, may, in its or his discretion, order such postponement as may be necessary to afford the defendant reasonable opportunity to comply with subsection (a) of this section and defend the action or proceeding.

"(c) Nothing in subsection (a) of this section shall be construed to prevent an unauthorized person or insurer from filing a motion to quash a writ or to set aside service thereof made as provided in section 38a-25, section 38a-26 or section 38a-273 on the ground that the person or insurer served has not done any of the acts enumerated in subsection (a) of section 38a-271."

[2] The plaintiffs are Hartford Accident and Indemnity Company, Hartford Casualty Insurance Company, Harford Fire Insurance Company, Hartford Insurance Company of Canada, Hartford Insurance Company of Illinois, Hartford Insurance Company of the Midwest, Hartford Insurance Company of the Southeast, Hartford Lloyd's Insurance Company, Hartford Underwriters Insurance Company, Nutmeg Insurance Company, Pacific Insurance Company, Sentinel Insurance Company, Limited, Trumbull Insurance Company and Twin City Fire Insurance Company.

[3] The defendants are approximately 225 foreign and domestic reinsurance companies, approximately 150 of which are underwriting syndicates of Lloyd's of London.

On June 29, 2006, the plaintiffs filed a motion to withdraw their appeal as to a certain group of defendants, namely, the underwriting syndicates of Lloyd's of London, in light of a recent settlement between the plaintiffs and those defendants. We granted the plaintiffs' motion on July 13, 2006. The matter with respect to the remaining defendants is not affected by the plaintiffs' partial withdrawal of their appeal.

[4] An unauthorized insurer is "an insurer that has not been granted a certificate of authority by the [insurance] commissioner to transact the business of insurance in this state or an insurer transacting business not authorized by a valid certificate." General Statutes § 38a-1 (11) (E).

We conclude that the trial court's denial of the plaintiffs' motion for prepleading security is a final judgment for purposes of appeal and, therefore, reverse the judgment of the Appellate Court.

The following undisputed facts and procedural history are relevant to our resolution of this appeal. The plaintiffs commenced the underlying action seeking, inter alia, damages for the defendants' alleged breach of numerous reinsurance contracts. In accordance with the express terms of those contracts, the plaintiffs caused copies of the writ, summons and complaint to be served on the defendants' designated agents for service of process. Thereafter, the plaintiffs filed a motion for an order compelling the defendants to post prepleading security pursuant to § 38a-27 (a). In the alternative, the plaintiffs moved to strike the defendants' answer and special defenses, and for the entry of a default judgment.[5] The trial court denied the plaintiffs' motion, concluding that the plaintiffs were not entitled to prepleading security because § 38a-27 (a) applies only to actions commenced under the substitute service provisions of General Statutes §§ 38a-25,[6] 38a-26[7] or 38a-

[5] Unless otherwise indicated, references hereinafter to the plaintiffs' motion for prepleading security include the plaintiffs' alternative request for an order striking the defendants' answer and special defenses, and for a default judgment.

[6] General Statutes § 38a-25 provides in relevant part: "(a) The Insurance Commissioner is the agent for receipt of service of legal process on the following:

* * *

"(7) Except as provided by section 38a-273, unauthorized insurers or other persons assisting unauthorized insurers who directly or indirectly do any of the acts of insurance business as set forth in subsection (a) of section 38a-271.

* * *

"(e) The right to effect service of process as provided under this section does not limit the right to serve legal process in any other manner provided by law."

[7] General Statutes § 38a-26 sets forth the procedure for service of process under § 38a-25.

273,[8] and the plaintiffs, which had served the defendants directly through their agents for service of process, had not invoked those substitute service provisions in the present action. The plaintiffs appealed to the Appellate Court from the trial court's order denying their motion, and the defendants filed a motion to dismiss the appeal for lack of a final judgment. The Appellate Court granted the defendants' motion without opinion. We granted the plaintiffs' petition for certification to appeal limited to the following issue: "Did the Appellate Court properly dismiss [the plaintiffs'] appeal for lack of a final judgment?" *Hartford Accident & Indemnity Co.* v. *Ace American Reinsurance Co.*, 272 Conn. 910, 863 A.2d 701 (2004).

We begin our analysis by setting forth the legal principles that govern our review of the certified question. "Our law relating to final judgments and interlocutory orders is well established. We previously have noted that [t]he right of appeal is purely statutory. It is accorded only if the conditions fixed by statute and the rules of court for taking and prosecuting the appeal are

---

[8] General Statutes § 38a-273 provides in relevant part: "(a) Any act of doing an insurance business, as set forth in subsection (a) of section 38a-271, by any unauthorized person or insurer is equivalent to and shall constitute an irrevocable appointment by such person or insurer, binding upon him, his executor, administrator or personal representative, or successor in interest if a corporation, of the Secretary of the State to be the true and lawful attorney of such person or insurer upon whom may be served all legal process in any action or proceeding in any court by the commissioner or by the state and upon whom may be served any notice, order, pleading or process in any proceeding before the commissioner and which arises out of doing an insurance business in this state by such person or insurer. Any such act of doing an insurance business by any unauthorized person or insurer shall be signification of its agreement that any such legal process in such court action or proceeding and any such notice, order, pleading or process in such administrative proceeding before the commissioner so served shall be of the same legal force and validity as personal service of process in this state upon such person or insurer, or upon his executor, administrator or personal representative, or its successor in interest if a corporation. . . ."

met. . . . *Rivera* v. *Veterans Memorial Medical Center*, 262 Conn. 730, 733, 818 A.2d 731 (2003), quoting *State* v. *Curcio*, [191 Conn. 27, 30–31, 463 A.2d 566 (1983)]. Moreover, [t]he statutory right to appeal is limited to appeals by aggrieved parties from final judgments . . . *Rivera* v. *Veterans Memorial Medical Center*, supra, 733, quoting *State* v. *Curcio*, supra, 30; and we have observed that [l]imiting appeals to judgments that are final serves the important public policy of minimizing interference with and delay in the resolution of trial court proceedings. . . . *Lisee* v. *Commission on Human Rights & Opportunities*, 258 Conn. 529, 541, 782 A.2d 670 (2001), quoting *Madigan* v. *Madigan*, 224 Conn. 749, 752–53, 620 A.2d 1276 (1993). Because our jurisdiction over appeals . . . is prescribed by statute, we must always determine the threshold question of whether the appeal is taken from a final judgment before considering the merits of the claim. . . . *Rivera* v. *Veterans Memorial Medical Center*, supra, 733–34, quoting *State* v. *Curcio*, supra, 30–31." (Internal quotation marks omitted.) *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective*, 271 Conn. 474, 495, 857 A.2d 893 (2004), cert. denied, 544 U.S. 974, 125 S. Ct. 1826, 161 L. Ed. 2d 723 (2005).

"In both criminal and civil cases . . . we have determined certain interlocutory orders and rulings of the Superior Court to be final judgments for purposes of appeal. An otherwise interlocutory order is appealable in two circumstances: (1) [when] the order or action terminates a separate and distinct proceeding, [and] (2) [when] the order or action so concludes the rights of the parties that further proceedings cannot affect them. . . . *Rivera* v. *Veterans Memorial Medical Center*, supra, 262 Conn. 734, quoting *State* v. *Curcio*, supra, 191 Conn. 30–31. The first prong of the *Curcio* test . . . requires that the order being appealed from be sever-

able from the central cause of action so that the main action can proceed independent of the ancillary proceeding. . . . *Burger & Burger, Inc.* v. *Murren*, 202 Conn. 660, 664, 522 A.2d 812 (1987), quoting *State* v. *Parker*, 194 Conn. 650, 654, 485 A.2d 139 (1984). If the interlocutory ruling is merely a step along the road to final judgment then it does not satisfy the first prong of *Curcio. State* v. *Parker*, supra, 653." (Internal quotation marks omitted.) *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective*, supra, 271 Conn. 496. "Obviously a ruling affecting the merits of the controversy would not pass the first part of the *Curcio* test. The fact, however, that the interlocutory ruling does not implicate the merits of the principal issue at the trial . . . does not necessarily render that ruling appealable. It must appear that the interlocutory ruling will not impact directly on any aspect of the [action]." *State* v. *Parker*, supra, 653.

"The second prong of the *Curcio* test focuses on the nature of the right involved. It requires the parties seeking to appeal to establish that the trial court's order threatens the preservation of a right already secured to them and that that right will be irretrievably lost and the [parties] irreparably harmed unless they may immediately appeal. . . . Thus, a bald assertion that [the appellant] will be irreparably harmed if appellate review is delayed until final adjudication . . . is insufficient to make an otherwise interlocutory order a final judgment. One must make at least a colorable claim that some recognized statutory or constitutional right is at risk." (Citation omitted; internal quotation marks omitted.) *Chadha* v. *Charlotte Hungerford Hospital*, 272 Conn. 776, 785–86, 865 A.2d 1163 (2005). In other words, "the [appellant] must do more than show that the trial court's decision threatens him with irreparable harm. The [appellant] must show that that decision threatens to abrogate a right that he or she *then* holds."

(Emphasis in original; internal quotation marks omitted.) *Tappin* v. *Homecomings Financial Network, Inc.*, 265 Conn. 741, 752, 830 A.2d 711 (2003). Moreover, "when a statute vests the trial court with discretion to determine if a particular [party] is to be accorded a certain status, the [party] may not invoke the rights that attend the status as a basis for claiming that the court's decision not to confer that status deprives the [party] of protections to which [it] . . . is entitled. For an interlocutory order to be an appealable final judgment it must threaten the preservation of a right that the [party] already holds. The right itself must exist independently of the order from which the appeal is taken. Whe[n] a [discretionary] decision has the effect of not granting a particular right, that decision, even if erroneous, does not threaten the [party's] already existing rights." *State* v. *Longo*, 192 Conn. 85, 92–93, 469 A.2d 1220 (1984).

The plaintiffs claim that the trial court's denial of their motion to compel the defendants to post prepleading security is immediately appealable under both prongs of the *Curcio* test. Although we disagree that the court's order denying the plaintiffs' motion constitutes a final judgment for purposes of appeal under the first prong of *Curcio*, we conclude that it does constitute a final judgment under the second prong of *Curcio* and, therefore, is immediately appealable.

The plaintiffs first claim that the order satisfies the first prong of the *Curcio* test because the order terminated a separate and distinct proceeding that is severable from the underlying action, which, the plaintiffs maintain, can proceed unimpeded during the pendency of the appeal. In support of their contention, the plaintiffs note that the issue of whether they are entitled to prepleading security does not turn on the particular facts of the case, and the resolution of that issue otherwise is not entwined with the merits of the underlying

litigation. The plaintiffs further maintain that an order denying prepleading security under § 38a-27 (a) is analogous to an order granting or denying a prejudgment remedy under General Statutes § 52-278d, an order that this court previously has concluded satisfies the final judgment test.[9] We are not persuaded by the plaintiffs' arguments.

As we have explained, the fact that an interlocutory ruling does not implicate the merits of the underlying litigation does not necessarily render the ruling appealable under the first prong of *Curcio*. It also must appear that an appeal will not impact directly on any aspect of the action. See *State* v. *Parker*, supra, 194 Conn. 653. Our analysis of this issue in *Parker* is instructive. In that case, the defendant, Robert L. Parker, was charged with burglary and larceny, and he applied for accelerated rehabilitation. Id., 651. The trial court granted Parker's application and released him into the custody of the office of adult probation for two years. Id. At the conclusion of the two year period, Parker filed a motion to dismiss the burglary and larceny charges, claiming that he successfully had completed the terms of his probation. Id., 651–52. The trial court denied the motion, and Parker appealed. Id., 652. We granted the state's motion to dismiss the appeal for lack of a final judgment, concluding, inter alia, that the trial court's order denying Parker's motion to dismiss the charges failed the first prong of *Curcio*. Id., 655. Specifically, we stated: "Both an application for accelerated rehabilitation and a

---

[9] Prior to 1976, the prejudgment remedy statute was silent as to whether an order granting or denying a prejudgment remedy was an appealable final judgment. In *E. J. Hansen Elevator, Inc.* v. *Stoll*, 167 Conn. 623, 628, 356 A.2d 893 (1975), however, this court held that such an order is a final judgment for purposes of appeal. Following our opinion in that case, the legislature, in 1976, amended the prejudgment remedy statute to provide expressly that an order granting or denying a prejudgment remedy is immediately appealable. See Public Acts 1976, No. 76-401, § 4. That provision now is codified at General Statutes § 52-278*l*.

motion for dismissal of the charge grounded on a claimed successful completion of the conditions of such rehabilitation impact directly on the prosecution of the crime charged. The former seeks to suspend prosecution during a stated probationary period not to exceed two years while the latter [seeks] to terminate the prosecution completely. Each is part of a discretionary pretrial diversionary program developed by the legislature as a possible alternative to prosecution for certain defendants. The very structure and purpose of the statutory scheme dictates that it is an additional and possibly final step in the criminal process. Since the effect of accelerated rehabilitation is to delay, and possibly to end, criminal prosecution, it can in no way constitute a 'separate and distinct proceeding' within the meaning of the *Curcio* test." Id., 654–55.

As the plaintiffs acknowledge, one potential outcome of their appeal, in the event it is successful, is the entry of a default judgment against the defendants if, upon remand, the defendants are either unable or unwilling to post court-ordered security. Another potential outcome is a delay of the plaintiffs' action in accordance with General Statutes § 38a-27 (b), which vests the court with discretion to "order such postponement as may be necessary to afford the defendant[s] reasonable opportunity to comply with subsection (a) of this section and defend the action or proceeding." Accordingly, the present appeal "in no way constitute[s] a 'separate and distinct proceeding' within the meaning of the *Curcio* test"; *State* v. *Parker*, supra, 194 Conn. 655; because, as in *Parker*, one possible outcome of the appeal "is to delay" the underlying action, and another outcome is "possibly to end" the action.[10] Id. Indeed, it is precisely

___

[10] The plaintiffs nevertheless argue that allowing their appeal to proceed would promote judicial economy, a primary policy underlying the final judgment rule, because § 38a-27 (a) provides for the entry of a default judgment against an unauthorized insurer that is unable or unwilling to post security. The argument that a successful appeal may dispense with the need for a trial is plausible, however, with respect to any number of appeals

because a successful appeal on the merits could delay or end the underlying action that, contrary to the plaintiffs' contention, the present appeal bears little similarity, for final judgment purposes, to an appeal from an order granting or denying a prejudgment remedy. As we explained in *E. J. Hansen Elevator, Inc.* v. *Stoll,* 167 Conn. 623, 356 A.2d 893 (1975), "prejudgment remedy proceedings pursuant to the provisions of [§ 52-278d] are not involved with the adjudication of the merits of the action brought by [a] plaintiff *or with the progress or result of that adjudication.* They are only concerned with whether and to what extent [that] plaintiff is entitled to have property of the defendant held in the custody of the law pending adjudication of the merits of that action." (Emphasis added.) Id., 629–30. In the present case, in contrast, a resolution on appeal that is favorable to the plaintiffs likely could affect the progress, and even the outcome, of the underlying action. Consequently, we cannot conclude that the trial court's order denying the plaintiffs' motion for prepleading security terminated a separate and distinct proceeding for purposes of the first prong of *Curcio.*

We turn, therefore, to the plaintiffs' claim that the trial court's order constitutes an appealable final judgment

from interlocutory orders, the resolution of which often may result in the termination of the underlying actions. That possibility alone is insufficient reason to conclude that an interlocutory order is immediately appealable. As this court previously has observed, our "decisions . . . have emphasized that the statutory final judgment rule [also] serves the important public policy of discouraging the delays and inefficiencies that attend piecemeal appeals. . . . These decisions recognize that the allowance of interlocutory appeals must be very narrowly prescribed. Immediate review of every trial court ruling, while permitting more prompt correction of erroneous decisions, would impose unreasonable disruption, delay, and expense. It would also undermine the ability of [trial court] judges to supervise litigation. . . . For these reasons, this court has expressed the preference that some erroneous trial court decisions go uncorrected until appeal after judgment rather than have litigation disrupted by piecemeal appeals." (Citations omitted; internal quotation marks omitted.) *Burger & Burger, Inc.* v. *Murren,* supra, 202 Conn. 669.

under the second prong of *Curcio* because the order eviscerated rights already secured to the plaintiffs. Specifically, the plaintiffs maintain that, it they are barred from taking an immediate appeal from the trial court's order, their right to obtain security prior to the defendants' participation in the action, or, alternatively, their right to seek a default judgment against the defendants, will be foreclosed permanently. The plaintiffs further claim that, because those rights are valuable and never can be restored, their loss would be irreparably harmful.

As we have explained, under the second prong of the *Curcio* test, the party seeking to appeal must establish that the trial court's order threatens the preservation of a right already secured and that the right will be irretrievably lost and the party irreparably harmed unless an immediate appeal is permitted. E.g., *Chadha* v. *Charlotte Hungerford Hospital,* supra, 272 Conn. 785–86. "An essential predicate to the applicability of this prong is the identification of jeopardy to [either] a statutory or constitutional right that the interlocutory appeal seeks to vindicate." (Internal quotation marks omitted.) *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective,* supra, 271 Conn. 497. We have said that the claimed right cannot be "a contingent right created by statute and subject to the discretion of the trial court"; *State* v. *Garcia,* 233 Conn. 44, 66, 658 A.2d 947 (1995); rather, the right must exist independently of the order from which the appeal is taken. See, e.g., *State* v. *Longo,* supra, 192 Conn. 91.

Moreover, even when an order impinges on an existing right, if that right is subject to vindication after trial, the order is not appealable under the second prong of *Curcio.* Thus, as we observed in *State* v. *Parker,* supra, 194 Conn. 650, even if the trial court improperly had denied Parker's motion to dismiss the criminal charges against him on the basis of his successful completion of the terms of his accelerated rehabilitation,

Parker's right to a dismissal of the charges was "fully capable of being vindicated after trial." Id., 658. In explaining our conclusion, we noted that "[t]here is a small class of cases [that] meets the test of being effectively unreviewable on appeal from a final judgment and [that], therefore, is subject to interlocutory review. The paradigmatic case in this group involves the right against double jeopardy. . . . Because jeopardy attaches at the commencement of trial, to be vindicated at all, a colorable double jeopardy claim must be addressed by interlocutory review. No such considerations obtain in the case of an allegedly rehabilitated person claiming to be entitled to a dismissal of the charges. There is a crucial distinction to be drawn between a right not to be tried and a right whose remedy requires the dismissal of charges. . . . The former necessarily falls into the category of rights that can be enjoyed only if vindicated prior to trial. The latter does not. . . . Admittedly, there is value—to all but the most unusual litigant—in triumphing before trial, rather than after it, regardless of the substance of the winning claim. But this truism is not to be confused with the quite distinct proposition that certain claims (because of the substance of the rights entailed, rather than the advantage to a litigant in winning his claim sooner) should be resolved before trial." (Citations omitted; internal quotation marks omitted.) Id., 658–59.

We conclude that the plaintiffs have satisfied the second prong of the *Curcio* test because they have demonstrated that their rights under § 38a-27 (a) will be lost irretrievably, thereby resulting in irreparable harm, if they are not permitted to vindicate those rights immediately. Section § 38a-27 (a) provides that, before any unauthorized insurer files any pleading in any action brought against it, that insurer must either (1) deposit with the clerk of the court cash or securities or a bond approved by the court sufficient to secure the payment

of any judgment that may be rendered against it, provided that the court, in its discretion, may issue an order dispensing with the deposit or bond if the insurer has demonstrated that it has funds or securities in this state sufficient and available to satisfy any judgment, or (2) obtain proper authorization to conduct the business of insurance in this state. Thus, the court may, in its discretion, dispense with the requirement that an unauthorized insurer deposit funds directly with the clerk of the court, but the court may do so only if the insurer has available assets in this state that are sufficient to satisfy a judgment. In the present case, the defendants have not contested the plaintiffs' allegation that they do not have assets in this state. Because § 38a-27 (a) prohibits an unauthorized insurer without assets in Connecticut from defending an action until it posts security, the trial court's order denying the plaintiffs' motion for security eviscerated a right that, the plaintiffs maintain, they presently hold.[11] Furthermore, the

[11] We find no merit to the defendants' contention that the plaintiffs have failed to satisfy the second prong of *Curcio* because § 38a-27 (a) vests discretion in the trial court (1) to determine the amount of the necessary security and whether that security will take the form of cash, securities or a bond, and (2) to dispense altogether with the security requirement upon finding that the unauthorized insurer has sufficient assets in this state. The fact that § 38a-27 (a) affords the court discretion to determine the amount and the form of the security to be posted is beside the point. The issue raised by the plaintiffs' appeal is their claimed right to prepleading security, not the amount or the form of that security. Furthermore, as we have explained, § 38a-27 (a) permits the trial court to dispense with the requirement of prepleading security only if the unauthorized insurer has assets in this state that are sufficient to satisfy a judgment or if the defendants procure authorization to do business in this state. In the present case, it is undisputed that the defendants do not have assets in this state. Accordingly, to the extent that the plaintiffs are entitled to the benefit of § 38a-27 (a), the trial court was required to order that the defendants, before being permitted to defend the plaintiffs' action, either obtain proper authorization from the insurance commissioner to conduct business in this state or provide security in an amount sufficient to satisfy a judgment against them. In this important respect, the present case is distinguishable from those cases in which we have concluded that a trial court's order failed the second prong of *Curcio* because a statute vested the trial court with discretion to determine *whether*

plaintiffs will suffer irreparable harm if they are barred from taking an appeal from the order denying their motion for prepleading security until after the conclusion of the trial because, once the trial has concluded, the court will be unable to restore to the plaintiffs either their right to have the defendants post security or their right to obtain a default judgment against the defendants.

*Cohen* v. *Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S. Ct. 1221, 93 L. Ed. 1528 (1949), is instructive as to why the trial court's order in the present case falls within the small category of cases that satisfies the stringent requirements of the second prong of *Curcio*. *Cohen* was a shareholder's derivative action in which federal jurisdiction was based on the diverse citizenship of the parties. See id., 543–44. Prior to trial, the defendants, Beneficial Industrial Loan Corporation[12] and certain of its managers and directors (Beneficial), moved to compel the plaintiff shareholders (shareholders) to post security pursuant to a New Jersey statute that required plaintiffs in shareholder derivative actions to post security for the costs of litigation.[13] Id., 544–55.

to confer a right or status. See, e.g., *State v. Parker*, supra, 194 Conn. 658–59 (order denying defendant's motion to dismiss criminal charges predicated on his purported successful completion of accelerated rehabilitation failed second prong of *Curcio* because statute vested discretion in trial court to determine whether defendant successfully had completed rehabilitation program); *State v. Longo*, supra, 192 Conn. 92–93 (order denying youthful offender status pursuant to General Statutes § 54-76b did not constitute appealable final judgment because statute vested discretion in trial court to determine whether youthful offender status should be granted).

[12] Beneficial Industrial Loan Corporation was a Delaware corporation with its principal place of business in New Jersey. See *Cohen v. Beneficial Industrial Loan Corp.*, supra, 337 U.S. 543.

[13] The New Jersey statute provides in relevant part: "In any action instituted or maintained in the right of any domestic or foreign corporation by the holder or holders of shares, or of voting trust certificates representing shares, of such corporation having a total par value or stated capital value of less than five per centum (5%) of the aggregate par value or stated capital value of all the outstanding shares of such corporation's stock of every class, exclusive of shares held in the corporation's treasury, unless the

The United States District Court for the District of New Jersey denied Beneficial's motion on the ground that the New Jersey statute did not apply to actions brought in federal court. Id., 545. Beneficial appealed from the order of the District Court to the United States Court of Appeals for the Third Circuit, which concluded that the District Court's order denying Beneficial's motion was immediately appealable for purposes of the then-existing federal final judgment rule, 28 U.S.C. § 225 (a) (1946).[14] *Beneficial Industrial Loan Corp.* v. *Smith,* 170 F.2d 44, 50 (3d Cir. 1948). In explaining its conclusion, the Third Circuit observed that, "without the right to sustain an appeal Beneficial could never gain the security to which it [was] entitled if the statute [was] applicable . . . ." Id., 49–50.

Upon granting the shareholders' petition for a writ of certiorari, the United States Supreme Court recognized the need for an exception to the final judgment rule for a "small class" of prejudgment orders that

shares or voting trust certificates held by such holder or holders have a market value in excess of fifty thousand dollars ($50,000.00), the corporation in whose right such action is brought shall be entitled, at any stage of the proceeding before final judgment, to require the complainant or complainants to give security for the reasonable expenses, including counsel fees, which may be incurred by it in connection with such action and by the other parties defendant in connection therewith for which it may become subject pursuant to law, its certificate of incorporation, its by-laws or under equitable principles, to which the corporation shall have recourse in such amount as the court having jurisdiction shall determine upon the termination of such action. The amount of such security may thereafter, from time to time, be increased or decreased in the discretion of the court having jurisdiction of such action upon showing that the security provided has or may become inadequate or is excessive." N.J. Rev. Stat. § 14:3-15 (Cum. Sup. 1945).

[14] Title 28 of the United States Code, § 225 (a) (1946), provides in relevant part: "The circuit courts of appeals shall have appellate jurisdiction to review by appeal final decisions—

"First. In the district courts, in all cases save where a direct review may be had in the Supreme Court . . . ."

The current federal final judgment rule is codified at 28 U.S.C. § 1291 (2000).

"finally determine[s] claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen* v. *Beneficial Industrial Loan Corp.*, supra, 337 U.S. 546. Concluding that the District Court's order denying Beneficial's motion to compel the shareholders to post security fell into this small class of orders, the court explained that, if Beneficial were required to wait until the final disposition of the merits of the shareholders' action against Beneficial, "it will be too late effectively to review the . . . order, and the rights conferred by the statute . . . will have been lost, probably irreparably."[15] Id. As in *Cohen*, unless the plaintiffs in the present case are permitted to take an immediate appeal from the trial court's order denying their motion for prepleading security, their asserted right to such security will be irretrievably lost,[16] and they are likely to suffer the irreparable harm

---

[15] In reaching its conclusion, however, the Supreme Court was careful to note that not "every order fixing security is subject to appeal. . . . [I]t is the right to security that present[ed] a serious and unsettled question. If the right were admitted or clear and the order involved only an exercise of discretion as to the amount of security, a matter the statute makes subject to reconsideration from time to time, appealability would [have] present[ed] a different question." *Cohen* v. *Beneficial Industrial Loan Corp.*, supra, 337 U.S. 547. As in *Cohen*, it is the trial court's allegedly improper denial of the plaintiffs' claimed *right* to prepleading security, and not the amount or form of such security, that gives rise to an appealable final judgment in the present case.

We note that, following *Cohen*, the United Supreme Court has observed that the "collateral order" exception to the federal final judgment rule is a "narrow [one] . . . whose reach is limited to trial court orders affecting rights that will be irretrievably lost in the absence of an immediate appeal. . . . To fall within the exception, an order must at a minimum satisfy three conditions: It must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." (Citations omitted; internal quotation marks omitted.) *Richardson-Merrell, Inc.* v. *Koller*, 472 U.S. 424, 430–31, 105 S. Ct. 2757, 86 L. Ed. 2d 340 (1985).

[16] Although we express no view regarding the ultimate merits of the plaintiffs' claim that they are entitled to prepleading security under § 38a-27 (a),

of being unable to enforce any judgment that they ultimately may secure against the defendants.[17]

The defendants claim that, if the legislature had intended to provide a right of appeal from an order granting or denying prepleading security under § 38a-27 (a), it would have done so expressly, as it did for purposes of our prejudgment remedy statute. See Gen-

that claim, at a minimum, is a colorable one. As we have indicated, the trial court denied the plaintiffs' motion under § 38a-27 (a) because, in the trial court's view, the plaintiffs had not invoked the substitute service provisions of §§ 38a-25, 38a-26 or 38a-273 as required by § 38a-27 (a). In particular, § 38a-25 (a), the provision that is applicable to the present action, designates the insurance commissioner as the agent for the receipt of service of legal process on an unauthorized insurer who is doing business in this state. See footnote 6 of this opinion. Although § 38a-25 also permits service of process on such unauthorized insurers "in any other manner provided by law"; General Statutes § 38a-25 (e); the trial court concluded that the plaintiffs' failure to invoke the substitute service provisions of § 38a-25 (a)—by virtue of its service of process in accordance with the express terms of the reinsurance contracts—placed the action outside the purview of § 38a-27 (a). At least one court, however, has reached a contrary conclusion under a materially identical statutory scheme. See *Aqua-Marine Constructors, Inc.* v. *Banks*, Civ. No. 92-1161-FR, 1993 WL 513241, *2–*3 (D. Or. December 9, 1993) (because Oregon's substitute service provision also expressly authorized any legally sufficient method of service of process, plaintiff who properly served unauthorized insurer, albeit not by service on that insurer's statutorily designated agent for service, was not foreclosed from invoking its rights under Oregon's prepleading security statute). Indeed, in denying the plaintiffs' motion for prepleading security because the plaintiffs had served the defendants' agents for service rather than the insurance commissioner, the trial court expressly acknowledged that, because the substitute service provisions referred to in § 38a-27 (a) do not preclude any other lawful manner of service; see General Statutes § 38a-25 (e); it is plausible to construe § 38a-27 (a) as applying to any action in which the unauthorized insurer has been served in accordance with law. We need not decide whether the trial court's interpretation of § 38a-27 (a) was correct, however, because, for purposes of this appeal, the plaintiffs have made a colorable claim that, contrary to the conclusion of the trial court, that statutory provision applies to their action against the defendants.

[17] Indeed, even if the defendants are fully capable of paying any judgment that may be rendered against them, we agree with the plaintiffs that an important purpose of § 38a-27 is to save this state's citizens from the expense and difficulty of postjudgment asset searches and collection proceedings in distant forums.

eral Statutes § 52-278d. We disagree. Although the legislature is free to make it clear in the language of a statute that an immediate appeal may be taken from an order of the court, the absence of such language is not determinative of whether such a right exists. See, e.g., *Shay* v. *Rossi*, 253 Conn. 134, 164–67, 749 A.2d 1147 (2000) (denial of motion to dismiss based on colorable claim of sovereign immunity under General Statutes § 4-165 is appealable final judgment notwithstanding legislature's failure to provide expressly for right of appeal in statute), overruled in part on other grounds by *Miller* v. *Egan*, 265 Conn. 301, 828 A.2d 549 (2003). Rather, we presume that the legislature is aware of our longstanding final judgment jurisprudence. Cf. *Wiseman* v. *Armstrong*, 269 Conn. 802, 822, 850 A.2d 114 (2004) ("[t]he legislature is always presumed to be aware of all existing statutes and the effect that its action or nonaction will have on any of them"). Consequently, unless the legislature has made its intent clear regarding the appealability of an interlocutory order under a particular statute, our determination of whether that order is immediately appealable hinges on whether the order meets the test articulated in *Curcio*. Because the trial court's order denying the plaintiffs' motion for prepleading security under § 38a-27 (a) satisfies the second prong of the *Curcio* test, the Appellate Court improperly dismissed the plaintiffs' appeal for lack of a final judgment.

The judgment of the Appellate Court is reversed and the case is remanded to that court to consider the merits of the plaintiffs' appeal.

In this opinion the other justices concurred.