HARTFORD ACCIDENT AND INDEMNITY COMPANY
ET AL. *v.* ACE AMERICAN REINSURANCE
COMPANY ET AL.
(AC 25661)

DiPentima, Lavine and Peters, Js.

Argued May 30—officially released August 14, 2007

*Jonathan M. Freiman*, with whom were *Jeffrey R. Babbin* and, on the brief, *Seth L. Huttner, James I.*

*Rubin*, pro hac vice, and *Robert N. Hermes*, pro hac vice, for the appellants (plaintiffs).

*James F. Sullivan*, with whom were *Jack G. Steigelf-est* and, on the brief, *Dale T. Miller*, pro hac vice, for the appellees (defendant underwriters of Lloyd's of London et al.).

*Richard Blumenthal*, attorney general, and *Rupal Shah Palanki*, assistant attorney general, filed a brief for *Susan F. Cogswell*, insurance commissioner of the state of Connecticut, as amicus curiae.

*Opinion*

PETERS, J. General Statutes § 38a-27 (a) prohibits an unauthorized insurer from filing any pleading in an action instituted against it by "service made in accordance with the provisions of section 38a-25, section 38a-26 or section 38a-273" without (1) posting prepleading security in an amount sufficient to secure the payment of any final judgment which may be rendered against it or (2) "procur[ing] proper authorization to do an insurance business in this state." The principal issue in this appeal is an issue of statutory construction about statutorily authorized methods of service of process to obtain access to prepleading security. The trial court held that the statutory reference to "service made in accordance with the provisions of section 38a-25" requires service to be made on the insurance commissioner or the secretary of the state and precludes service made on the unauthorized insurers' contractually designated agents for service of process. Because we are persuaded that this holding assigns insufficient weight to General Statutes § 38a-25 (e), which authorizes service of process "in any other manner provided by law," we disagree with the trial court's judgment in favor of the defendant insurers. We are persuaded, however, that on remand, for constitutional reasons, the defendant insurers are entitled to a hearing about the amount

of prepleading security that they must provide. We reverse the judgment of the trial court and remand the case for further proceedings.

On April 1, 2004, the plaintiffs, Hartford Accident and Indemnity Company and thirteen of its affiliates,[1] filed an amended fifty-seven count complaint seeking damages from the defendants, Ace American Reinsurance Company and various other reinsurance companies,[2] for alleged breach of numerous reinsurance contracts. In accordance with the terms of the reinsurance contracts, some of the defendants were served with process through service on identified agents in New York designated for that purpose.

On May 4, 2004, the defendants filed an answer and eighteen special defenses. In response, on May 29, 2004, the plaintiffs filed a motion pursuant to § 38a-27[3] for

[1] The plaintiffs are Hartford Accident and Indemnity Company, Hartford Casualty Insurance Company, Hartford Fire Insurance Company, Hartford Insurance Company of Canada, Hartford Insurance Company of Illinois, Hartford Insurance Company of the Midwest, Hartford Insurance Company of the Southeast, Hartford Lloyd's Insurance Company, Hartford Underwriters Insurance Company, Nutmeg Insurance Company, Pacific Insurance Company, Sentinel Insurance Company Limited, Trumbull Insurance Company and Twin City Fire Insurance Company.

[2] The original defendants were approximately 225 foreign and domestic reinsurance companies, approximately 150 of which are underwriting syndicates of Lloyd's of London. We note that many of the defendants received service through the insurance commissioner as their statutory agent for service. The defendants receiving service in that manner are not parties to this appeal.

The remaining defendants, many of which are headquartered at Lloyd's of London, were served through their contractual agent for service of process in New York and were therefore subject to the trial court's July 19, 2004 oral decision. Of these defendants, because of intervening settlements, only five remain parties to this appeal concerning the continued efforts of the plaintiffs to obtain prepleading security.

[3] General Statutes § 38a-27 provides in relevant part: "(a) Before any unauthorized person or insurer files or causes to be filed any pleading in any court action or proceeding or in any administrative proceeding before the commissioner instituted against the person or insurer by service made in accordance with the provisions of section 38a-25, section 38a-26 or section 38a-273, the person or insurer shall either: (1) Deposit with the clerk of the

an order either to compel the posting of prepleading security or to strike the answer and special defenses of the defendants. In their opposition to this motion filed on June 25, 2004, the defendants who are involved in this appeal argued that the plaintiffs' motions should be denied because service was not made on the defendants through the insurance commissioner as required by §§ 38a-27 and 38a-25.

On July 19, 2004, the court heard arguments from both parties and issued an oral decision denying the plaintiffs' motion. In those arguments, the parties disagreed about whether service on the defendants' contractual agent was service "made in accordance with the provisions of section 38a-25" and therefore triggering prepleading security under § 38a-27. In particular the court was required to interpret § 38a-25 (e), which provides that "[t]he right to effect service of process as provided under this section does not limit the right to serve legal process in any other manner provided by law," and to decide whether that subsection permitted the plaintiffs to serve the defendants' contractual agent for service for purposes of § 38a-27.

The court determined that § 38a-25 (e) did not allow the plaintiffs to serve the defendants through a contractual agent and still to obtain prepleading security. In denying the motion for prepleading security, the court

court in which the action or proceeding is pending, or with the commissioner in administrative proceedings before the commissioner, cash or securities or a bond with good and sufficient sureties to be approved by the court or the commissioner, in an amount to be fixed by the court or the commissioner sufficient to secure the payment of any final judgment which may be rendered in the action or proceeding, provided the court or the commissioner in administrative proceedings may in its or his discretion make an order dispensing with the deposit or bond where the insurer shows to the satisfaction of the court or the commissioner that it maintains in this state funds or securities, in trust or otherwise, sufficient and available to satisfy any final judgment which may be entered in the action or proceeding; or (2) procure proper authorization to do an insurance business in this state."

refused to "find that sections like § 38a-25 (e) [were] something that addresse[d] the method or manner of service, which is clearly what § 38a-27 (a) refers to in saying, 'service made in accordance with the provisions of § 38a-25.' " Instead, the court explained that "§ 38a-25 (e) [was] a rule of construction that help[ed] govern . . . the other provisions of § 38a-25, but not a rule that creates or defines a manner or method of making service. . . . [O]ur statutes commonly include these sort of catchall provisions in service statutes, and . . . [it did not seem likely] that the purpose of including § 38a-25 (e) was to make the security statute applicable in a case involving reinsurance . . . but, rather, that is just the normal type of provision that our service statutes normally . . . use."

On July 26, 2004, the plaintiffs appealed from the decision of the trial court to this court. On October 27, 2004, this court dismissed the appeal, without opinion, in response to the defendants' motion to dismiss for lack of a final judgment. After granting the plaintiffs' petition for certification to appeal, *Hartford Accident & Indemnity Co.* v. *Ace American Reinsurance Co.*, 272 Conn. 910, 863 A.2d 701 (2004), our Supreme Court reversed the dismissal and remanded the case to this court to consider the merits of the plaintiffs' appeal. *Hartford Accident & Indemnity Co.* v. *Ace American Reinsurance Co.*, 279 Conn. 220, 238, 901 A.2d 1164 (2006).

On appeal, the plaintiffs claim that the court improperly interpreted the language of the interconnected provisions of §§ 38a-27 and 38a-25 and that they are entitled either to prepleading security or to a default judgment. The defendants, conversely, claim that the court properly construed § 38a-25 (e). In the alternative, they also claim that the plaintiffs are not entitled to invoke § 38a-27 because, as "industrial insureds," they have no right to prepleading security. Finally, the defendants also

claim that, if we disagree with their statutory arguments, they are entitled, on remand, to a hearing prior to the court's determination of the amount of prepleading security required to be posted. We agree with the plaintiffs as a matter of statutory interpretation, but agree with the defendants that they are entitled to a hearing on the amount of security that § 38a-27 requires them to post.

I

The plaintiffs' only affirmative claim is that the court improperly interpreted § 38a-27 as requiring that service be made on the commissioner of insurance, pursuant to the substituted service provisions of § 38a-25, in order to obtain prepleading security.[4] The plaintiffs argue that the expansive nature of § 38a-25 (e), which provides that "[t]he right to effect service of process as provided under this section does not limit the right to serve legal process in any other manner provided by law," permitted them to serve the defendants "in accordance with the provisions of § 38a-25," as required by § 38a-27, by serving the defendants' contractual agent for service of process. The defendants, on the other hand, argue that, because they were not served by substituted service via the insurance commissioner, the plaintiffs could not obtain prepleading security pursuant to the provisions of § 38a-27. We agree with the plaintiffs and reverse the decision of the trial court.

[4] In its oral decision, the court focused primarily on the substituted service provisions of General Statutes § 38a-25 and the meaning of subsection (e) in that section. We note that § 38a-25 provides for substituted service made on the commissioner of insurance and that General Statutes § 38a-273 provides similar means of making substituted service but on the secretary of the state. Sections 38a-25 and 38a-273 both include language that provides that the substituted service provisions shall not limit or abridge the rights of a party to make service of process in any other legal manner. See General Statutes §§ 38a-25 (e) and 38a-273 (e). In light of the similar language in these two sections, our interpretation of § 38a-25 (e) is equally applicable to § 38a-273 (e).

Our standard of review for issues of statutory interpretation is well settled. "Issues of statutory construction raise questions of law, over which we exercise plenary review. . . . The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . .

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Citations omitted; internal quotation marks omitted.) *Alvord Investment, LLC* v. *Zoning Board of Appeals*, 282 Conn. 393, 401–402, 920 A.2d 1000 (2007).

We begin our construction of § 38a-27 by examining the language of the statute.[5] Section 38a-27 provides in

_____

[5] The court also noted that it was "struck by the title of [General Statutes] § 38a-27, which states, 'Procedure where substituted service made against unauthorized insurer.' " The trial court then noted that the title of a statute may be useful in the process of statutory interpretation. Noting that "[i]t's not a dispositive factor," the court concluded that "when it's in the title [and] in the preamble to the statement of purpose, a reference to substituted service, I . . . think it's of some significance."

Although "it is often useful to examine the title of a proposed bill . . . and the purpose the legislature intended to accomplish by its enactment," the title of the legislation is useful only "when it is acted upon by the legislature . . . ." (Internal quotation marks omitted.) *State* v. *State Employees' Review Board*, 239 Conn. 638, 649, 687 A.2d 134 (1997). We note that even though the heading of § 38a-27 was changed from "Procedure

relevant part that "[b]efore any unauthorized person or insurer files or causes to be filed any pleading in any court action or proceeding or in any administrative proceeding before the commissioner instituted against the person or insurer by service made in accordance with the provisions of section 38a-25, section 38a-26 or section 38a-273, the person or insurer shall either: (1) [provide prepleading security] or (2) procure proper authorization to do an insurance business in this state."[6] The plaintiffs claim that they are entitled to prepleading security because the service made on the defendants' contractual agent for service of process conforms to the requirements of § 38a-25.

On its face, § 38a-25 describes the authorized method of service of process on unauthorized insurers in an open ended fashion. It is true, as the defendants note and the court emphasized, that § 38a-25 (a) (7) provides that the insurance commissioner shall serve as an agent for service for unauthorized insurers. It is, however, equally true, as the plaintiffs observe, that § 38a-25 (e) provides that "[t]he right to effect service of process

prior to proceedings. Postponement of proceedings. Motions to quash and to set aside service," to "Procedure where substituted service made against unauthorized insurer," in the 1991 revisions to the General Statutes, these changes were not part of the enactment voted on by the legislature. See Public Acts 1990; No. 90-243, § 150. In our construction of § 38a-27, we, therefore, assign no significance to the language of the statutory heading.

[6] The defendants claim that, although they were not authorized insurers under Connecticut's General Statutes, they, nonetheless, were not "unauthorized" insurers as that term is used in General Statutes § 38a-27. The defendants' argument is untenable.

General Statutes § 38a-1 (11) · (E) specifically defines "unauthorized insurer" as that term is used in title 38a. It provides: " 'Unauthorized insurer' . . . means an insurer that has not been granted a certificate of authority by the commissioner to transact the business of insurance in this state or an insurer transacting business not authorized by a valid certificate." The defendants conceded at trial that they had not been granted a certificate of authority by the commissioner and have not indicated to this court that they have obtained a certificate since trial. The defendants, therefore, are "unauthorized insurers" as that term is used in § 38a-27.

as provided under this section does not limit the right to serve legal process in any other manner provided by law." Standing alone, § 38a-25 cannot be read to exclude service on a designated agent without making subsection (e) surplusage.

The difficulty with this straightforward reading is that § 38a-25 must be read in conjunction with the provision in § 38a-27, the prepleading security statute, that expressly authorizes service not only in accordance with the provisions of § 38a-25 but also in accordance with the provisions of General Statutes §§ 38a-26 or 38a-273. If § 38a-25 (e) already permits service in accordance with these latter provisions, then arguably the cross reference in § 38a-27 to §§ 38a-26 and 38a-273 also is surplusage.

The defendants argue that the court properly identified the way out of this statutory maze by limiting § 38a-25 (e) to cases that do not involve access to prepleading security. Their argument finds support in the "well-settled principle of [statutory] construction that specific terms covering [a] given subject matter will prevail over general language of . . . another statute which might otherwise prove controlling." (Internal quotation marks omitted.) *Board of Education* v. *State Board of Education*, 278 Conn. 326, 338, 898 A.2d 170 (2006). The defendants ask us to follow this principle of statutory construction and to conclude that the specific terms of § 38a-27 requiring service made under one of the three named statutes supersedes any broader method of service provided within §§ 38a-25, 38a-26 and 38a-273. We do not, however, agree that this principle of statutory construction is controlling in this case because, as a remedial statute, § 38a-27 "should be liberally construed in favor of the class sought to be benefited . . . ." (Internal quotation marks omitted.) *Edmands* v. *CUNO, Inc.*, 277 Conn. 425, 441 n.10, 892 A.2d 938 (2006).

Like Connecticut's other remedial statutes, § 38a-27 provides a remedy to a class of individuals that was not available before its enactment. See *Blakeslee* v. *Platt Bros. & Co.*, 279 Conn. 239, 245, 902 A.2d 620 (2006) (workers' compensation act); *Eder Bros., Inc.* v. *Wine Merchants of Connecticut, Inc.*, 275 Conn. 363, 379, 880 A.2d 138 (2005) (Connecticut Unfair Trade Practices Act); *Okee Industries, Inc.* v. *National Grange Mutual Ins. Co.*, 225 Conn. 367, 373, 623 A.2d 483 (1993) (mechanic's lien statute). As a derivative of the National Association of Insurance Commissioners Model Laws, Regulations and Guidelines, the purpose of §§ 38a-25, 38a-26, 38a-27 and 38a-273 is "to subject certain insurers to the jurisdiction of the courts of this state in suits by or on behalf of insureds or beneficiaries under insurance contracts." Id., § 850-1. These provisions were enacted in response to the fact that "many residents . . . hold policies of insurance issued or delivered in this state by insurers while not authorized to do business in this state, thus presenting to these residents the often insuperable obstacle of resorting to distant forums for the purpose of asserting legal rights under these policies." Id.

As remedial measures, §§ 38a-25, 38a-26, 38a-27 and 38a-273 must be interpreted liberally to ensure Connecticut's insureds' access to the remedy of prepleading security. In light of the repeated references in various subsections of § 38a-27 to other sections of title 38a,[7] we are not persuaded that the statute was meant to provide the remedy of prepleading security only if an

---

[7] General Statutes § 38a-27 (b) provides: "The court in any action or proceeding in which service is made as provided in section 38a-25, section 38a-26 and section 38a-273, or the commissioner in any administrative proceeding in which service is made as provided in section 38a-273, may, in its or his discretion, order such postponement as may be necessary to afford the defendant reasonable opportunity to comply with subsection (a) of this section and defend the action or proceeding."

unauthorized insurer is served through substituted service. To the contrary, we think that it would be illogical for the legislature to have intended to debar a plaintiff from this remedy because it has used a form of service that was authorized in the defendants' contracts and was more likely than service on the insurance commissioner to reach the defendants expeditiously. Rather than interpret the statute in this manner, "[w]e consider the statute as a whole with a view toward reconciling its parts in order to obtain a sensible and rational overall interpretation." (Internal quotation marks omitted.) *Wiseman* v. *Armstrong*, 269 Conn. 802, 813, 850 A.2d 114 (2004). As § 38a-27 (b) illustrates, the legislature simply chose to couple the access of domestic plaintiffs to prepleading security with permission for the plaintiffs to utilize various forms of notice to unauthorized foreign defendants.

Furthermore, in construing § 38a-27 to include the incorporation of various means by which service can be made, we are in accord with other jurisdictions' interpretation of similar statutes. See *T.P.K. Construction Corp.* v. *Southern American Ins. Co.*, 739 F. Sup. 213, 215 (S.D.N.Y. 1990) ("[t]here is no language in the [New York substituted service statute] to support such a distinction between the two forms of service"); *International Surplus Lines Ins. Co.* v. *Certain Underwriters & Underwriting Syndicates at Lloyd's of London*, 868 F. Sup. 923, 926 (S.D. Ohio 1994); *Aqua-Marine Constructors, Inc.* v. *Banks*, United States District Court, Docket No. 92-1161-FR, 1993 U.S. Dist. LEXIS 17541, **7–8 (D. Or. 1993) ("[b]ecause [Oregon's substituted service statute] expressly authorizes any legally sufficient method of service of process, [the plaintiff] has satisfied the service requirements of [Oregon's prepleading security statute]"), aff'd, 110 F.3d 663 (9th Cir.), cert. denied sub nom. *Polaris Ins. Co. Ltd.* v. *Aqua-Marine Constructors, Inc.*, 522 U.S. 933, 118 S.

Ct. 339, 139 L. Ed. 2d 263 (1997); but see *Schnitzer Investment Corp.* v. *Certain Underwriters at Lloyd's of London,* 197 Or. App. 147, 165–69, 104 P.3d 1162 (2005) (construing similar language to require service on Oregon director of department of consumer and business services for award of attorney's fees), aff'd, 341 Or. 128, 137 P.3d 1282 (2006) (en banc).[8]

In sum, in light of the language of § 38a-27 in its entirety and the cross references it contains, and our practice of giving a liberal construction to a remedial statute, we conclude that the plaintiffs properly served the defendants in this case by serving the defendants' designated agents for process. Having done so, the plaintiffs are entitled to have the court exercise its discretion to determine the amount of prepleading security that the defendants must provide in order to defend against the plaintiffs' claims. See part III.

II

The defendants have raised a second issue of statutory construction that focuses on the exclusion of "industrial insureds" from the prepleading security provisions of § 38a-27. It is undisputed that, pursuant to General Statutes § 38a-271 (c), "[t]he provisions of section 38a-27 do not apply to . . . (5) transactions . . . involving contracts of insurance issued to . . . industrial insureds . . . ." Having ruled for the defendants on the issue of service of process, the court did not reach this issue.

---

[8] We note that although General Statutes § 38a-25 (e) is based on a model law, see 5 National Association of Insurance Commissioners Model Laws, Regulations and Guidelines § 850-1, and despite the fact that similar provisions have been enacted in thirty-nine jurisdictions; see id., § 850-6; the defendants have not cited, nor has our research uncovered, a single case in which a court has denied prepleading security where service has been made by means other than substituted service.

Although the plaintiffs do not deny that they are "industrial insureds,"[9] they maintain that, because they are reinsureds, they are entitled to the exemption from § 38a-271 (c) that is contained in § 38a-271 (b) (2). That subsection states in relevant part that "[t]he provisions of sections 38a-271 to 38a-278, inclusive . . . do not apply to . . . (2) the lawful transaction of reinsurance by insureds . . . ."[10] General Statutes § 38a-271 (b). It is undisputed that the plaintiffs are reinsureds. We agree with the plaintiffs that the exemption is dispositive of the defendants' claim.

In accordance with § 1-2z, we begin our interpretation of § 38a-271 with the language of the statute. See *Alvord Investment, LLC* v. *Zoning Board of Appeals*, supra, 282 Conn. 401–402. The defendants urge us to focus on the exemption of "industrial insureds" contained in General Statutes § 38a-271 (c) (5) and on the provision in § 38a-289 that "[c]ontracts for reinsurance shall be deemed insurance contracts . . . ." In the defendants' view, these sections demonstrate that § 38a-271 (b) cannot reasonably be read to override the "industrial insureds" exclusion from the prepleading security statute contained in § 38a-271 (c).[11] We are not persuaded.

"We construe a statute as a whole and read its subsections concurrently in order to reach a reasonable overall interpretation." (Internal quotation marks omitted.)

---

[9] General Statutes § 38a-271 (c) (8) defines an industrial insured as "an insured (A) which procures the insurance of any risk by the use of the services of a full-time employee acting as an insurance manager or buyer, or the services of a regularly and continuously retained qualified insurance consultant, and (B) whose aggregate annual premiums for insurance, excluding life, accident and health insurance, total at least fifty thousand dollars."

[10] General Statutes §§ 38a-271 through 38a-278, inclusive, encompass chapter 698d of the General Statutes, which is also known as the Unauthorized Insurers Act.

[11] General Statutes § 38a-271 (c) provides in relevant part: "The provisions of section 38a-27 do not apply to . . . (5) transactions, in this state, involving contracts of insurance issued to one or more industrial insureds . . . ."

*Barry* v. *Quality Steel Products, Inc.*, 280 Conn. 1, 9, 905 A.2d 55 (2006). Construing § 38a-271 as a whole, we agree with the plaintiffs that § 38a-271 (b) (2) prevents the application of the exemption in § 38a-271 (c) (5) for contracts of reinsurance. The language of § 38a-271 (b) (2) is sweeping and unconditional. It categorically prevents any part of §§ 38a-271 to 38a-278 from being applied to all reinsurance contracts. If, nonetheless, recourse to legislative history were appropriate, we agree with the plaintiffs that the legislature's intent in enacting the industrial insurer exemption in 1969 does not shed light on the legislature's intent in subsequently enacting the reinsurance act in 1996. See *State* v. *Jenkins*, 198 Conn. 671, 679, 504 A.2d 1053 (1986). We conclude, therefore, that the provisions of § 38a-271 (b) (2) prevent the application to the plaintiffs of the exemptions for industrial insureds from § 38a-27 otherwise provided by § 38a-271 (c) (5).

### III

The final issue that we must decide is whether, as the defendants claim, the court, on remand, must permit the defendants to present evidence to inform the court's exercise of its statutory discretion to determine the amount of security that the defendants must post as a condition of responding to the merits of the plaintiffs' claim. The defendants argue that such a hearing is constitutionally required under the due process clause of the fourteenth amendment to the United States constitution. The plaintiffs maintain, to the contrary, that the court may base its determination of the amount of the required prepleading security on the damages alleged in the prima facie case set forth in the plaintiffs' complaint. Because of its ruling in favor of the defendants on the sufficiency of the plaintiffs' service of process, the court did not reach this issue. We agree with the defendants.

To decide whether § 38a-27 requires an evidentiary hearing, we once again begin with the text of the statute.

*Alvord Investment, LLC* v. *Zoning Board of Appeals,* supra, 282 Conn. 401–402. Subdivision (1) of § 38a-27 (a) provides in relevant part that before filing any pleading, an unauthorized insurer must "[d]eposit with the clerk of the court . . . cash or securities or a bond with good and sufficient sureties *to be approved by the court . . . in an amount to be fixed by the court . . . sufficient to secure the payment of any final judgment which may be rendered in the action or proceeding.*" (Emphasis added.) Although the language of § 38a-27 does not expressly provide for a hearing, we must decide whether the language requiring the prepleading security to be "approved by the court" entitles the defendants to a hearing before the court determines the amount of security that must be posted.

Our interpretation of § 38a-27 is guided by the tenet of statutory construction instructing us that "if a literal reading would place the statute in constitutional jeopardy, this court will go beyond the face of the statute to determine whether it may be construed so as to achieve its purpose in a manner which is both effective and constitutional." (Internal quotation marks omitted.) *Castagno* v. *Wholean,* 239 Conn. 336, 340, 684 A.2d 1181 (1996), overruled on other grounds by *Roth* v. *Weston,* 259 Conn. 202, 217, 789 A.2d 431 (2002). To decide whether to construe § 38a-27 to require a hearing, we turn to federal case law addressing due process challenges to other statutes that, like § 38a-27, authorize prejudgment remedies that impose cognizable costs on prejudgment defendants.

In *Connecticut* v. *Doehr,* 501 U.S. 1, 111 S. Ct. 2105, 115 L. Ed. 2d 1 (1991), the United States Supreme Court addressed the question of "what process must be afforded by a state statute enabling an individual to enlist the aid of the State to deprive another of his or her property by means of [a] prejudgment attachment *or similar procedure.*" (Emphasis added.) Id., 9. *Doehr*

established that the relevant inquiry requires, "first, consideration of the private interest that will be affected by the prejudgment measure; second, an examination of the risk of erroneous deprivation through the procedures under attack and the probable value of alternative safeguards; and third . . . principal attention to the interest of the party seeking the prejudgment remedy, with, nonetheless, due regard for any ancillary interest the government may have in providing the procedure or forgoing the added burden of providing greater protections." Id., 11. Applying this test to Connecticut's then-enacted prejudgment remedy statute, *Doehr* held that "a state statute authorizing prejudgment attachment of [property] without prior notice or hearing [is] unconstitutional, in the absence of extraordinary circumstances, even though the attachment did not interfere with the owner's use or possession . . . ." *United States* v. *James Daniel Good Real Property*, 510 U.S. 43, 54, 114 S. Ct. 492, 126 L. Ed. 2d 490 (1993), citing *Connecticut* v. *Doehr*, supra, 1. Accordingly, our statute did not pass constitutional muster.

In response to *Doehr*, our legislature amended our prejudgment remedy statute to preclude the issuance of a prejudgment remedy without the holding of an adversarial hearing. See General Statutes § 52-278e; see also *Calfee* v. *Usman*, 224 Conn. 29, 35, 616 A.2d 250 (1992). In *Calfee*, our Supreme Court emphasized the importance of this procedural requirement to sustaining the constitutionality of the amended statute. See also *Kinsale, LLC* v. *Tombari*, 95 Conn. App. 472, 481, 897 A.2d 646 (2006).

This history strongly supports the conclusion that, on its face, § 38a-27 is in constitutional jeopardy. For constitutional purposes, it is difficult to find a persuasive distinction between a statute authorizing a court to order a prejudgment attachment of a defendant's property and a statute authorizing a court to order the

defendant to deposit prepleading security to secure a remedy for a successful plaintiff. In both cases, until there is a final judgment, a court order deprives the defendant of the full use and enjoyment of its property. In both cases, access to an evidentiary hearing affords the defendant the due process rights to which it is constitutionally entitled.

In the specific context of insurance law, a recent decision by the United States Court of Appeals for the Second Circuit is particularly instructive. In *British International Ins. Co. Ltd.* v. *Seguros La Republica, S.A.*, 212 F.3d 138, 142 (2d Cir.) (per curiam), cert. denied, 531 U.S. 1010, 121 S. Ct. 564, 148 L. Ed. 2d 484 (2000), that court expressly applied the test enunciated in *Doehr* to turn down a due process challenge to New York's prepleading security statute, which is analogous to § 38a-27.[12] In so holding, the court emphasized that the New York statute presented "little risk of erroneous deprivation [and] significant additional procedural safeguards." Id., 143. Among the safeguards that preserved the constitutionality of the New York statute was the presence of "court supervision before an insurer may be required to post [prepleading] security . . . and . . . an opportunity to be heard before being subjected to the [prepleading] security requirement." (Citations omitted; internal quotation marks omitted.) Id. The federal court relied on an earlier New York Court of Appeals case that had focused on the "[mandate of] court supervision" and the "opportunity to be heard

---

[12] Section 1213 (c) (1) of the New York Insurance Law provides in relevant part: "Before any unauthorized foreign or alien insurer files any pleading in any proceeding against it, it shall either: (A) deposit with the clerk of the court in which the proceeding is pending, cash or securities or file with such clerk a bond with good and sufficient sureties, *to be approved by the court, in an amount to be fixed by the court* sufficient to secure payment of any final judgment which may be rendered in the proceeding . . . or (B) procure a license to do an insurance business in this state." (Emphasis added.) N.Y. Ins. Law § 1213 (c) (1) (McKinney 2006).

before being subjected to the [prepleading] security requirement" in upholding the constitutionality of the New York prepleading statute. *Curiale* v. *Ardra Ins. Co. Ltd.*, 88 N.Y.2d 268, 278, 667 N.E.2d 313, 644 N.Y.S.2d 663 (1996).[13]

In light of the near identity between the language used in the New York statute and § 38a-27, *British International Ins. Co. Ltd.* is a persuasive precedent for this case. The plaintiffs do not deny that the defendants have cognizable property rights with respect to the security that § 38a-27 requires them to provide. To avoid the constitutional jeopardy that would attach to § 38a-27 if it were read literally, the statute must be interpreted to afford the defendants the hearing to which they are constitutionally entitled. See *Castagno* v. *Wholean*, supra, 239 Conn. 340.

By way of summary, we conclude that, as the plaintiffs have argued, their manner of serving the defendants complied with the statutory requirements of § 38a-27. They are, therefore, entitled to a remand for a determination of the appropriate amount of prepleading security. We also conclude, however, as the defendants have argued, that, at the remand which we have ordered, both parties will be entitled to present evidence about "the amount to be fixed by the court."

The judgment is reversed and the case is remanded for further proceedings in accordance with law.

In this opinion the other judges concurred.

---

[13] We note that the Supreme Court of Texas also has rejected a due process challenge to an analogous prepleading security statute where notice and a "full evidentiary hearing" were provided to the unauthorized insurers prior to the posting of security. *Mid-American Indemnity Ins. Co.* v. *King*, 22 S.W.3d 321, 327 (Tex. 1995).