# ELLEN PALMER ET AL. *v.* FRIENDLY ICE CREAM CORPORATION
## (SC 17735)

Rogers, C. J., and Katz, Vertefeuille, Zarella and Schaller, Js.

Argued September 5, 2007—officially released February 12, 2008

*Deepak Gupta,* pro hac vice, with whom were *Daniel S. Blinn, Anthony J. Pantuso III* and, on the brief, *Brian Wolfman,* pro hac vice, and *Scott L. Nelson,* pro hac vice, for the appellants (plaintiffs).

*William C. Saturley,* pro hac vice, with whom were *Johanna G. Zelman* and, on the brief, *Michael J. Rose* and *Jeffrey A. Meyers,* pro hac vice, for the appellee (defendant).

*Opinion*

ZARELLA, J. The sole issue raised by this appeal is whether an order denying class certification is an appealable final judgment. The plaintiffs,[1] thirty-seven persons employed as waiters or waitresses by the defendant, Friendly Ice Cream Corporation, appealed from the order of the trial court to the Appellate Court, which dismissed the appeal for lack of a final judgment. We granted the plaintiffs' petition for certification to appeal from the Appellate Court's judgment. The plaintiffs claim that a denial of class certification should be treated as a final judgment because such a denial meets the test for appealability of otherwise interlocutory orders. The plaintiffs claim that denial of class certification ends the claims of absentee plaintiffs and threatens rights they possess with respect to the class action. Because we conclude that the denial of class certification does not meet either prong of the *Curcio*[2] test, we affirm the judgment of the Appellate Court.

[1] The original complaint was filed by Ellen Palmer, Cindy Brown and Vicky Wilks on behalf of "themselves and a class of all others similarly situated . . . ." The trial court granted the plaintiffs' motion for leave to join thirty-four additional plaintiffs to the action on November 9, 2005.

[2] *State* v. *Curcio,* 191 Conn. 27, 463 A.2d 566 (1983).

The following undisputed facts and procedural history are relevant to our resolution of this appeal. The plaintiffs filed a class action complaint against the defendant on October 4, 2004. The trial court, in its memorandum of decision, noted that the plaintiffs sought certification as a class to pursue their claims that the defendant had "failed to pay servers the hourly, minimum wage mandated by General Statutes § 31-60 because the defendant unlawfully deducted 'tip credits' from servers' wages" for work that was "non-service" in nature. The putative class includes "all current or former servers" at the defendant's forty-eight restaurants in Connecticut "against whose wages tip credits were subtracted."

The plaintiffs' complaint arose from the defendant's alleged violation of § 31-62-E4 of the Regulations of Connecticut State Agencies, which governs the payment of minimum wage for "[d]iversified employment within the restaurant industry . . . ."[3] The complaint alleges that the defendant "failed to definitely segregate all of the time spent performing 'non-service' duties and nevertheless took a 'tip credit' with respect to most of the hours worked by [the plaintiffs] and the class members and failed to compensate them at the required full minimum wage for their entire shift."

The trial court entered an order denying the plaintiffs' motion to certify the putative class on January 25, 2006. In its memorandum of decision, the court found that the plaintiffs had satisfied the requirements of numerosity,

[3] Section 31-62-E4 of the Regulations of Connecticut State Agencies provides: "If an employee performs both service and non-service duties, and the time spent on each is definitely segregated and so recorded, the allowance for gratuities as permitted as part of the minimum fair wage may be applied to the hours worked in the service category. If an employee performs both service and non-service duties and the time spent on each cannot be definitely segregated and so recorded, or is not definitely segregated and so recorded, no allowances for gratuities may be applied as part of the minimum fair wage."

commonality, typicality and adequate representation enumerated in Practice Book § 9-7. The trial court concluded, however, that the plaintiffs had failed to meet the predominance requirement for class certification under Practice Book § 9-8.[4] Specifically, the trial court determined that the evidence required to prove liability as to each member of the class was so individualized that class-wide issues did not predominate. The court concluded: "Our law, as explicated by [*Collins* v. *Anthem Health Plans, Inc.*, 275 Conn. 309, 880 A.2d 106 (2005)], would demand evidence . . . that each individual server of the proposed class performed specific, non-server duties during particular weeks within the pertinent time period. . . . The fact finder would need evidence as to each member of the class concerning what specific duties that member performed, and at what times, that required segregation before a tip credit was allowed."

The plaintiffs appealed to the Appellate Court from the trial court's order denying the motion for class certification. The Appellate Court dismissed the appeal for lack of a final judgment. We granted certification to appeal from the judgment of the Appellate Court limited

---

[1] "The rules of practice set forth a two step process for trial courts to follow in determining whether an action or claim qualifies for class action status. First, a court must ascertain whether the four prerequisites to a class action, as specified in Practice Book § 9-7, are satisfied. These prerequisites are: (1) numerosity—that the class is too numerous to make joinder of all members feasible; (2) commonality—that the members have similar claims of law and fact; (3) typicality—that the [representative] plaintiffs' claims are typical of the claims of the class; and (4) adequacy of representation—that the interests of the class are protected adequately. . . .

"Second, if the foregoing criteria are satisfied, the court then must evaluate whether the certification requirements of Practice Book § 9-8 are satisfied. These requirements are: (1) predominance—that questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (2) superiority—that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." (Citations omitted; internal quotation marks omitted.) *Collins* v. *Anthem Health Plans, Inc.*, 275 Conn. 309, 322, 880 A.2d 106 (2005).

to the following issue: "Is an order denying a motion for class certification a final judgment for purposes of appeal?" *Palmer* v. *Friendly Ice Cream Corp.*, 280 Conn. 918, 908 A.2d 537 (2006).

We begin by setting forth the standard of review. "The lack of a final judgment implicates the subject matter jurisdiction of an appellate court to hear an appeal. A determination regarding . . . subject matter jurisdiction is a question of law [over which we exercise plenary review]." (Internal quotation marks omitted.) *Pritchard* v. *Pritchard*, 281 Conn. 262, 270, 914 A.2d 1025 (2007).

We commence the discussion of our appellate jurisdiction by recognizing that there is no constitutional right to an appeal. E.g., *Chanosky* v. *City Building Supply Co.*, 152 Conn. 449, 451, 208 A.2d 337 (1965); *State* v. *Figueroa*, 22 Conn. App. 73, 75, 576 A.2d 553 (1990), cert. denied, 215 Conn. 814, 576 A.2d 544 (1991). Article fifth, § 1, of the Connecticut constitution provides for a Supreme Court, a Superior Court and such lower courts "as the general assembly shall . . . ordain and establish," and that "[t]he powers and jurisdiction of these courts *shall be defined by law.*" (Emphasis added.) To consider the plaintiffs' claims, we must apply the law governing our appellate jurisdiction, which is statutory. *State* v. *Curcio*, 191 Conn. 27, 30, 463 A.2d 566 (1983). The legislature has enacted General Statutes § 52-263,[5] which limits the right of appeal to those appeals filed by aggrieved parties on issues of law from final judgments. Unless a specific right to appeal other-

[5] General Statutes § 52-263 provides in relevant part: "Upon the trial of all matters of fact in any cause or action in the Superior Court, whether to the court or jury, or before any judge thereof when the jurisdiction of any action or proceeding is vested in him, if either party is aggrieved by the decision of the court or judge upon any question or questions of law arising in the trial, including the denial of a motion to set aside a verdict, he may appeal to the court having jurisdiction from the final judgment of the court or of such judge . . . ."

wise has been provided by statute, "we must always determine the threshold question of whether the appeal is taken from a final judgment before considering the merits of the claim." (Internal quotation marks omitted.) *Rivera* v. *Veterans Memorial Medical Center*, 262 Conn. 730, 733–34, 818 A.2d 731 (2003); see also *State* v. *Curcio*, supra, 30 (right of appeal "is accorded only if the conditions fixed by statute and the rules of court for taking and prosecuting the appeal are met"). Further, we have recognized that limiting appeals to final judgments "serves the important public policy of minimizing interference with and delay in the resolution of trial court proceedings." (Internal quotation marks omitted.) *Hartford Accident & Indemnity Co.* v. *Ace American Reinsurance Co.*, 279 Conn. 220, 225, 901 A.2d 1164 (2006). As it is relevant to this appeal, we note that the statute permitting class actions is silent regarding interlocutory appeals from a trial court's decision whether to certify a class. See generally General Statutes § 52-105.[6]

The plaintiffs claim that we should recognize that a denial of class certification satisfies the test for the appealability of an otherwise interlocutory order.[7] This

---

[6] General Statutes § 52-105 provides: "When the persons who might be made parties are very numerous, so that it would be impracticable or unreasonably expensive to make them all parties, one or more may sue or be sued or may be authorized by the court to defend for the benefit of all." As we noted previously, the rules governing a trial court's determination of whether to authorize class representation are set forth in Practice Book §§ 9-7 and 9-8. See footnote 4 of this opinion.

[7] The plaintiffs also claim that there should be a right to immediate appeal from an order denying class certification as a matter of public policy. In support of this argument, the plaintiffs emphasize the policy rationales underlying class actions that have been recognized by this court: "to . . . (1) promote judicial economy and efficiency; (2) protect defendants from inconsistent obligations; (3) protect the interests of absentee parties; and (4) provide access to judicial relief for small claimants." (Internal quotation marks omitted.) *Rivera* v. *Veterans Memorial Medical Center*, supra, 262 Conn. 735.

We do not agree with the plaintiffs that a rule permitting an automatic right to interlocutory review of orders denying class certification is necessarily

court has determined that certain interlocutory orders are to be treated as final judgments for purposes of appeal. To determine whether an order should be treated as such, we apply a two-pronged test: "An otherwise interlocutory order is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." *State* v. *Curcio,* supra, 191 Conn. 31. Unless an order can satisfy one of these two prongs, the lack of a final judgment "is a jurisdictional defect" that necessitates dismissal of the appeal. (Internal quotation marks omitted.) *Rivera* v. *Veterans Memorial Medical Center,* supra, 262 Conn. 734. Although an order that satisfies *either* prong will render it immediately appealable, the plaintiffs assert that the denial of class certification meets both prongs of the *Curcio* test. We disagree and analyze each prong respectively.

In order to satisfy the first prong of *Curcio,* the trial court's order must terminate a separate and distinct proceeding. *State* v. *Curcio,* supra, 191 Conn. 31. The plaintiffs claim that, "[b]ecause the order terminates the class action proceeding in its entirety and leaves only the named plaintiffs' individual actions, and because appeals from class certification decisions can

the best public policy. This argument fails to consider the separate policy considerations underlying the final judgment rule, which are "to discourage piecemeal appeals and to facilitate the speedy and orderly disposition of cases at the trial court level." (Internal quotation marks omitted.) *Pritchard* v. *Pritchard,* supra, 281 Conn. 270; see also *Waterbury Teachers Assn.* v. *Freedom of Information Commission,* 230 Conn. 441, 450, 645 A.2d 978 (1994) (noting that "concern for the efficient operation of the judicial system . . . is the practical consideration behind the policy against piecemeal litigation inherent in the final judgment rule" [internal quotation marks omitted]).

Under the plaintiffs' view, any denial of class certification, no matter how poor the arguments in favor of certification, would be eligible for interlocutory appellate review. We fail to recognize how such a rule would further judicial economy and efficiency.

proceed independently of litigation on the merits, the order is subject to immediate appeal." The defendant replies that a denial of class certification cannot satisfy the first prong of *Curcio* because it is not separate and distinct from the main action and because the determination of whether to certify a class directly impacts the litigation of the underlying action. We agree with the defendant.

Our case law defines the type of order that would terminate a separate and distinct proceeding and result in an immediate right to appeal. The judicial proceeding that triggers the appeal must be "independent of the main action." *State* v. *Parker*, 194 Conn. 650, 654, 485 A.2d 139 (1984). "The question to be asked is whether the main action could proceed independent[ly] of the ancillary proceeding." Id. A review of our prior cases reveals only a few examples of orders that we deem to terminate a separate and distinct proceeding, thereby satisfying the first prong of *Curcio*.

In *Briggs* v. *McWeeny*, 260 Conn. 296, 314, 796 A.2d 516 (2002), the plaintiff in error, Carole W. Briggs, brought a writ of error, challenging a trial court's order disqualifying her from appearing as an attorney on behalf of a school district in an action concerning damage to one of the school district's buildings. Id., 306–307. The trial court found that Briggs had violated the Rules of Professional Conduct by attempting to suppress the findings of an engineering report indicating that the school district was responsible, in part, for the building damage at issue in the litigation. See id., 303–305. We concluded that an order disqualifying an attorney from representing a party in the underlying litigation is separate and distinct. Id., 314. In analyzing the first prong of *Curcio*, we considered whether the disqualification proceeding was "so intertwined" with the underlying litigation that it could not be considered separate and distinct. Id. We rejected the suggestion of the defendant

in error that the alleged misconduct was factually inter-twined with the central issue in the underlying litigation, namely, the cause of the building damage. Id., 314, 316. In reaching our conclusion, we were persuaded by the fact that "the trial court carved out a separate and distinct proceeding at which it addressed the allegations of professional misconduct"; id., 314; the fact that the underlying "litigation had continued notwithstanding the . . . disqualification"; id.; and "[t]he fact that the sanction took effect immediately, as opposed to being delayed until the end of trial . . . ." Id., 316.

Unlike the determination of whether to disqualify an attorney, which, in *Briggs,* we concluded was not intertwined with the underlying litigation, a determination of whether to certify a class is intricately inter-twined with the facts of the underlying lawsuit. Both the United States Supreme Court and this court have recognized that the determination of whether a putative class meets the requirements necessary to proceed as a class is intimately connected to the adjudication of liability. See *Coopers & Lybrand* v. *Livesay,* 437 U.S. 463, 469, 98 S. Ct. 2454, 57 L. Ed. 2d 351 (1978); *Collins* v. *Anthem Health Plans, Inc.,* supra, 275 Conn. 321 (recognizing that "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the [plaintiffs'] cause of action" [internal quotation marks omitted]). In *Briggs,* the disqualification order was tantamount to a final judgment as to the attorney. An order denying class certification, however, does not resolve any issue with similar finality. As we concluded in *Rivera,* an order as to class certification is reviewable by the trial court throughout litigation. See *Rivera* v. *Veterans Memorial Medical Center,* supra, 262 Conn. 744 ("it is within the purview of the trial court to revisit the issue of class certification"). Furthermore, upon denial of class certi-fication, the named plaintiffs' lawsuit proceeds, and

putative class members retain the freedom to file their own lawsuit or to seek to intervene in the ongoing litigation.[8]

The United States Supreme Court's decision in *Coopers & Lybrand* provides additional guidance as to whether denials of class certification meet our test for appealability under the first prong of *Curcio*. The issue in that case was whether an order denying class certification was immediately appealable under the collateral order exception to the federal final judgment rule.[9] *Coo-*

[8] The plaintiffs also rely on *State* v. *Roberson*, 165 Conn. 73, 327 A.2d 556 (1973), for the proposition that a trial court's decision that results in the final disposition of a type of judicial proceeding authorized by statute or by rule of practice warrants interlocutory appeal. We find *Roberson* inapplicable to the question before us. In *Roberson*, the court rejected the state's argument that an order revoking probation was not an appealable final judgment. Id., 81–82. The court presumably did not apply the two part *Curcio* test because it concluded that the revocation order was a final judgment. "The inquiry preceding a revocation of probation concerns matters totally independent of the original conviction, the decision of the court marks the final disposition of a judicial proceeding authorized by statute and it is, in effect, a final modification of the sentence which is the judgment of the court . . . ." Id., 82. *Roberson* involved the modification of a convicted defendant's sentence, which already marked the entry of final judgment in the criminal proceeding. Accordingly, we do not find the trial court's order in *Roberson* to be analogous to the denial of class certification status, which results from a prejudgment order before the commencement of trial.

[9] The plaintiffs in *Coopers & Lybrand* claimed that the "death knell" theory, first articulated by the California Supreme Court in *Daar* v. *Yellow Cab Co.*, 67 Cal. 2d 695, 433 P.2d 732, 63 Cal. Rptr. 724 (1967), satisfied the test for immediate appealability under the collateral order exception to the federal final judgment rule. See *Coopers & Lybrand* v. *Livesay*, supra, 437 U.S. 470. The theory is premised on the idea that the denial of class certification "sounds the death knell" of the litigation because the individual claims may be "too small to justify the expense of litigation." *Blair* v. *Equifax Check Services, Inc.*, 181 F.3d 832, 834 (7th Cir. 1999). The California Supreme Court recognized this rationale as a justification for the immediate appealability of a trial court's refusal to certify a class. See *Daar* v. *Yellow Cab Co.*, supra, 699, 715. "In its legal effect . . . the order is tantamount to a dismissal of the action as to all members of the class action other than [the] plaintiff." (Citation omitted; internal quotation marks omitted.) Id., 699; see also *Richmond* v. *Dart Industries, Inc.*, 29 Cal. 3d 462, 470, 629 P.2d 23, 174 Cal. Rptr. 515 (1981) ("a decision . . . denying certification to an entire class is an appealable order").

*pers & Lybrand* v. *Livesay,* supra, 437 U.S. 464–65; see 28 U.S.C. § 1291 (2000). The court held that it was not. *Coopers & Lybrand* v. *Livesay,* supra, 465. The court's analysis under the collateral order exception is akin to the jurisdictional analysis that we employ under the first prong of *Curcio.* Similar to the first prong of *Curcio,* the collateral order exception permits an immediate appeal when the order "conclusively determine[s] the disputed question, resolve[s] an important issue completely separate from the merits of the action, and [is] effectively unreviewable on appeal from a final judgment." (Citation omitted.) Id., 468.

The United States Supreme Court observed that an order denying class certification "does not fall in [the] category"; id., 469; of the " 'small class' of decisions excepted from the final-judgment rule . . . ." Id., 468. "First, such an order is subject to revision in the District Court. . . . Second, the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action. . . . Finally, an order denying class certification is subject to effective review after final judgment at the behest of the named plaintiff or intervening class members." (Citations omitted; internal quotation marks omitted.) Id., 469. We agree with this analysis.

Therefore, we conclude that the denial of class certification does not constitute the termination of a separate and distinct proceeding because it is too intertwined with the named plaintiffs' lawsuit and is an order capable of review after a final judgment in that lawsuit. Additionally, we note that an appeal from a trial court's

The plaintiffs urge us to adopt the view of the California Supreme Court and to conclude that the denial of class certification not only ends the class action proceeding but also may end all potential individual lawsuits. We agree with the United States Supreme Court's characterization of this theory as one grounded in public policy and more appropriate for legislative determination. See *Coopers & Lybrand* v. *Livesay,* supra, 437 U.S. 470.

order denying class certification in all probability would result in delay of the underlying litigation. In *Hartford Accident & Indemnity Co.*, we observed that an appeal that, if successful, would result in a delay or possible end to the underlying litigation "in no way constitute[s] a 'separate and distinct proceeding' . . . ." *Hartford Accident & Indemnity Co.* v. *Ace American Reinsurance Co.*, supra, 279 Conn. 229–30. As a practical matter, the trial court's determination of whether a lawsuit may proceed as a class action impacts the number of plaintiffs, the defenses raised, the scope of discoverable information and the settlement posture of the parties. If the named plaintiffs' lawsuit (or that of any putative class member) were to proceed during an appeal of an order denying class certification, any subsequent reversal would negate the progress achieved in those lawsuits. For example, the class members would be entitled to notice of the resulting class action, and the defendant would be entitled to seek additional discovery. Thus, the trial court's ability to adjudicate the underlying controversy effectively and efficiently pending the appeal of the class certification ruling would be impacted, and the determination of class certification cannot possibly be described as an ancillary proceeding.[10] Moreover, the plaintiffs may appeal from the

---

[10] The plaintiffs rely on *Robichaud* v. *Hewlett Packard Co.*, 82 Conn. App. 848, 848 A.2d 495 (2004), in support of their argument that the named plaintiffs' underlying action can proceed independently of the appeal of class certification status. In *Robichaud*, the plaintiff consumers sought class certification to pursue claims against the defendant manufacturer for alleged misrepresentation about the volume of ink provided in certain ink-jet printer cartridges. Id., 850. The trial court denied certification because the named plaintiffs could not show that their individual claims were typical of the proposed class, and the plaintiffs appealed from the order of denial. Id., 850, 854. We find *Robichaud* inapposite. The plaintiffs' action in that case was based on the defendant's alleged violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., and CUTPA specifically authorizes an interlocutory appeal from "[a]n order denying class certification for an action under CUTPA." Id., 850 n.3; see General Statutes § 42-110h; see also footnote 12 of this opinion.

court's determination regarding class status upon the entry of a final judgment.

The plaintiffs nevertheless argue that, with the adoption of rule 23 (f) of the Federal Rules of Civil Procedure, *Coopers & Lybrand* is no longer the law in federal courts. Subsequent to the decision in *Coopers & Lybrand*, rule 23 (f) was adopted to permit federal appellate courts to grant interlocutory appeals from denials of class certification on a *discretionary* basis.[11] See Fed. R. Civ. P. 23 (f). The plaintiffs ask us to consider this as persuasive authority because we previously have acknowledged the similarities between federal court class action jurisprudence and our own, observing that we may look to federal case law for guidance. See *Collins* v. *Anthem Health Plans, Inc.*, 266 Conn. 12, 32–33, 836 A.2d 1124 (2003). We find this argument unpersuasive. Unlike the rules of civil procedure governing federal courts, there is no statutory authority granting appellate courts in Connecticut discretion to

---

[11] Rule 23 (f) of the Federal Rules of Civil Procedure provides: "A court of appeals may permit an appeal from an order granting or denying class-action certification under this rule if a petition for permission to appeal is filed with the circuit clerk within 10 days after the order is entered. An appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders."

The federal Circuit Courts of Appeals have recognized two situations in which an appellate court should exercise its discretion in favor of granting an immediate appeal. "The first category comprises the so-called 'death knell' cases . . . namely cases in which the class certification order effectively terminates the litigation either because the denial of certification makes the pursuit of individual claims prohibitively expensive or because the grant of certification forces the defendants to settle. . . .

"The second category of cases are those in which the class certification order implicates an unresolved legal issue concerning class actions." *In re Sumitomo Copper Litigation*, 262 F.3d 134, 138 (2d Cir. 2001), citing *Blair* v. *Equifax Check Services, Inc.*, 181 F.3d 832, 834–35 (7th Cir. 1999); cf. *Waste Management Holdings, Inc.* v. *Mowbray*, 208 F.3d 288, 293 (1st Cir. 2000).

review interlocutorily denials of class certification.[12] Our appellate jurisdiction is determined by the state constitution and statutes promulgated pursuant thereto; authority from other jurisdictions based on statutes or rules substantively different from ours is not persuasive. We are required to follow the dictates of the legislature with regard to our jurisdiction.

Having concluded that a denial of class certification does not satisfy the first prong of the *Curcio* test, we next turn our attention to the second prong. "The second prong of the *Curcio* test . . . requires the parties seeking to appeal to establish that the trial court's order threatens the preservation of *a right already secured to them* and that that right will be irretrievably lost

---

[12] Notably, the legislature already has taken limited action in this realm and has provided for a limited right to interlocutory appeals from class certification orders in actions brought under the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. General Statutes § 42-110h provides: "As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this section may be conditional, and it may be amended before decision on the merits. An order issued under this section shall be immediately appealable by either party."

In *Collins* v. *Anthem Health Plans, Inc.*, supra, 266 Conn. 12, we determined as a matter of law that when "both the factual and legal issues raised by the class certification order as to both the CUTPA and nonCUTPA counts are inextricably intertwined with each other, our decision on the CUTPA counts will . . . necessarily control the certification issues on the other counts as well." Id., 29.

Our case law is clear, however, that when the legislature chooses to act, it is presumed to know how to draft legislation consistent with its intent and to know of all other "existing statutes and the effect that its action or nonaction will have upon any one of them." (Internal quotation marks omitted.) *AvalonBay Communities, Inc.* v. *Zoning Commission*, 280 Conn. 405, 417, 908 A.2d 1033 (2006); see also *Fedus* v. *Planning & Zoning Commission*, 278 Conn. 751, 779, 900 A.2d 1 (2006) (noting presumption that, if legislature intends to limit or expand jurisdiction, it knows how to express that intent). The legislature could elect to expand our jurisdiction to provide for an automatic right to an immediate appeal from all orders denying class certification to further important policy interests. CUTPA demonstrates that the legislature has elected, rather, to provide for appellate jurisdiction for certain interlocutory orders, and not for others.

and the [parties] irreparably harmed unless they may immediately appeal. . . . *One must make at least a colorable claim that some recognized statutory or constitutional right is at risk.* . . . In other words, the [appellant] must do more than show that the trial court's decision threatens him with irreparable harm. The [appellant] must show that that decision threatens to abrogate a right that he or she *then* holds. . . . Moreover, when a statute vests the trial court with discretion to determine if a particular [party] is to be accorded a certain status, the [party] may not invoke the rights that attend the status as a basis for claiming that the court's decision not to confer that status deprives the [party] of protections to which [it] . . . is entitled." (Citations omitted; emphasis added; internal quotation marks omitted.) *Hartford Accident & Indemnity Co.* v. *Ace American Reinsurance Co.*, supra, 279 Conn. 226–27. "We have said that the claimed right cannot be 'a contingent right created by statute and subject to the discretion of the trial court' . . . ." Id., 231. "[E]ven when an order impinges on an existing right, if that right is subject to vindication after trial, the order is not appealable under the second prong of *Curcio*." Id.

The plaintiffs claim that putative class members lose several rights as a result of a trial court's order denying class certification, and, therefore, the denial of class certification satisfies the second prong of *Curcio*. The plaintiffs argue that, upon the denial of class certification, the applicable statute of limitations begins to run again, whereas, prior to that denial, it had been tolled. They further claim that the denial raises the specter that principles of preclusion will bar their right to bring a separate class action and that the legal representation owed to all putative class members by the class representative is lost. The defendant argues, inter alia, that any "rights" secured by an order certifying a class hinge on the discretion of the trial court, and, therefore, an

order denying class certification fails to satisfy the second prong of *Curcio*. We agree with the defendant that a denial of class certification does not cause the putative class members to lose a secured statutory or constitutional right.

The plaintiffs cite *Rivera* to support their position under the second prong. In *Rivera*, we held that an order decertifying a class was immediately appealable under the second prong of *Curcio*. *Rivera* v. *Veterans Memorial Medical Center*, supra, 262 Conn. 734. We emphasized that a proper analysis under the second prong of *Curcio* "focuses on the nature of the right involved." (Internal quotation marks omitted.) Id. In that case, the plaintiffs secured the right to proceed as a class when the trial court initially ordered certification of the class. See id., 732. That right, which they *already had secured*, was lost when, two years later, the trial court ordered the class decertified. See id., 733. The plaintiffs rely on our holding in *Rivera* and argue that an order decertifying a class leaves the plaintiffs in the same position as an order denying class certification. We disagree.

As we noted previously, § 52-105 authorizes a trial court, *in its discretion*, to permit class representation. It does not, however, require that a trial court do so or provide any guarantee to putative class members that a proposed class will be certified. We conclude that § 52-105 creates a statutory right to participate in a class action *once a trial court deems it appropriate*. "[W]hen the plaintiffs [in *Rivera*] were certified as a class by the trial court . . . they secured the right [pursuant to § 52-105] to proceed in a class action against the defendant. That right provided to the plaintiffs an economically efficient means to proceed in an action that they otherwise might [have been] unable to pursue." Id., 735. In *Rivera*, once the trial court exercised its discretion and ordered the class certified, the class

members had a statutory right under § 52-105 to proceed as a class. That statutory right to proceed as a class was harmed by the subsequent decertification order and, as we concluded in *Rivera*, warranted that such an order be treated as a final judgment under the second prong of *Curcio*. See id., 734–36.

In the present case, the plaintiffs have not secured any constitutional or statutory right. Unlike the plaintiffs in *Rivera*, who had been certified as a class; id., 732; the plaintiffs in the present case have only sought certification. Furthermore, the plaintiffs have made no colorable claim that a right is at risk. The potential to proceed as a class rests on the exercise of a trial court's discretion. Thus, no right arises until the court exercises that discretion and issues an order certifying the class. See *Hartford Accident & Indemnity Co.* v. *Ace American Reinsurance Co.*, supra, 279 Conn. 227 (noting that claimed right under *Curcio* cannot be contingent right subject to trial court's discretion).

Our appellate jurisdiction over a denial of a motion to intervene is consistent with our conclusion in this case.[13] General Statutes § 52-107[14] governs the interven-

---

[13] The plaintiffs also rely on an analogy between the denial of a motion for class certification and a denial of a motion for intervention. The plaintiffs rely on this comparison to support their argument with respect to the first prong of *Curcio*. Case law recognizing the right to an immediate interlocutory appeal from the denial of a motion to intervene as of right, however, analyzes the appealability of such orders under the second prong of *Curcio*, not the first prong. See *Common Condominium Assns., Inc.* v. *Common Associates*, 5 Conn. App. 288, 291, 497 A.2d 780 (1985) ("the second prong of [the *Curcio*] test . . . is the only one arguably implicated by a ruling on a motion to intervene"); see also *Kerrigan* v. *Commissioner of Public Health*, 279 Conn. 447, 449 n.3, 904 A.2d 137 (2006) (relying on *Common Condominium Assns., Inc.*). The justification for permitting appellate review lies in the statutory right held by the putative intervenors at the time of the denial. See *Common Condominium Assns., Inc.* v. *Common Associates*, supra, 291–92.

[14] General Statutes § 52-107 provides: "The court may determine the controversy as between the parties before it, if it can do so without prejudice to the rights of others; but, if a complete determination cannot be had without the presence of other parties, the court may direct that such other parties be brought in. If a person not a party has an interest or title which

tion of nonparties to a lawsuit and, unlike § 52-105, provides for both permissive intervention and intervention *as a matter of right*. We have concluded that, under the second prong of *Curcio*, appellate jurisdiction is proper over an appeal from the denial of a motion to intervene as a matter of right but not over the denial of a motion for permissive intervention. See *Kerrigan* v. *Commissioner of Public Health*, 279 Conn. 447, 449 n.3, 904 A.2d 137 (2006), citing *Common Condominium Assns., Inc.* v. *Common Associates*, 5 Conn. App. 288, 291–92, 497 A.2d 780 (1985). Permissive intervention, like class certification, is contingent on a trial court's exercise of discretion, and putative permissive intervenors have no statutory right to intervene. See *McClendon* v. *Soos*, 18 Conn. App. 614, 616–17, 559 A.2d 1163, cert. denied, 212 Conn. 808, 563 A.2d 1356 (1989); *Common Condominium Assns., Inc.* v. *Common Associates*, supra, 291–92. In *Common Condominium Assns., Inc.*, the Appellate Court observed that "[the] appealability of a trial court's action on a motion to intervene depend[s] on whether a person ha[s] an absolute right to intervene or whether intervention [is] a matter within the trial court's discretion." (Internal quotation marks omitted.) *Common Condominium Assns., Inc.* v. *Common Associates*, supra, 290. "Permissive intervention . . . is entrusted to the trial court's discretion . . . [and] depends on a balancing of factors . . . ." Id.[15]

When prospective intervenors have not made a colorable claim to intervene as a matter of right, there is no right to interlocutory review of the order denying their motion to intervene. The Appellate Court has observed

the judgment will affect, the court, on his application, *shall direct* him to be made a party." (Emphasis added.)

[15] Our case law provides that when an appellant can show a colorable claim of intervention as of right, "the court has jurisdiction to adjudicate both his claim to intervention as a matter of right and to permissive intervention." (Internal quotation marks omitted.) *Kerrigan* v. *Commissioner of Public Health*, supra, 279 Conn. 449 n.3.

that, in that instance, "further proceedings can affect the [appellant's] rights with respect to the other litigants in the case; [the appellant] can, if his motion to intervene is denied, still vindicate those rights by bringing his own independent action." Id., 292. We conclude that putative class members, unlike intervenors as of right, do not possess a statutory right, at the time they seek certification, that satisfies the second prong of *Curcio*. Such a right arises only *after* a court has ordered certification. Similar to the Appellate Court's observation in *Common Condominium Assns., Inc.*, regarding permissive intervenors; id.; further proceedings also can affect the rights of plaintiffs who are denied class certification because they may pursue their own individual actions against the defendant.

Nevertheless, the plaintiffs contend that a denial of class certification implicates rights associated with class status sufficient to satisfy the second prong of *Curcio*. They argue that the tolling of the statute of limitations on putative class members' claims is lost when the trial court denies class certification and that the denial "strips" the putative class members of the protection afforded by the legal representation provided during certification proceedings. We disagree with the plaintiffs that either of these is a statutory or constitutional right that would satisfy the *Curcio* test.[16]

---

[16] Additionally, the plaintiffs claim that "[a] denial of certification in one case may bar absent class members from filing a class action as a matter of preclusion doctrine." We read the plaintiffs' brief to suggest that the right to seek permission to proceed as a class provided by § 52-105 may be at risk if, after a denial of certification in one court, another court declines to consider a subsequent request for certification. We do not agree.

First, our research has failed to uncover any case in Connecticut, and the plaintiffs have not cited any, that recognizes such a principle or even suggests that a denial of class certification would automatically bar the named plaintiff or putative class members from seeking certification. Furthermore, no Connecticut case suggests that a plaintiff is barred from filing a renewed motion for class certification in light of additional evidence or a revised class definition. We also are not persuaded by the plaintiffs' reliance on *In re Bridgestone/Firestone, Inc., Tire Products Liability Litigation,*

We have held that when a trial court has discretion to grant a certain legal status to a party, upon denial, a requesting party may not claim the loss of the rights attendant to that status to satisfy the second prong of *Curcio. State* v. *Longo,* 192 Conn. 85, 93, 469 A.2d 1220 (1984) (when "a decision has the effect of not granting a particular right, that decision . . . does not threaten . . . already existing rights"). When a trial court exercises its discretion to grant class certification, it confers on the named plaintiffs and putative plaintiffs the status of class members. Our law is clear that there are rights attendant to that class member status, for example, the right to have their interests "fairly and adequately protect[ed]" by the class representative pursuant to Practice Book § 9-7 and the due process right to receive notice of the action and of any final judgment to which class members will be bound.

The plaintiffs correctly recognize that our case law also confers some benefits on putative class members attendant to the filing of the class complaint, for example, the fiduciary obligation that a purported representative owes to the putative class, as well as the tolling of the statute of limitations on their claims. These benefits are not, however, statutory or constitutional rights, like

333 F.3d 763 (7th Cir. 2003), to suggest that other jurisdictions would necessarily bar a named plaintiff from seeking class certification after a Connecticut court's denial thereof. The court in that case did not bar the plaintiffs from seeking certification of *any* class; rather, the court enjoined the plaintiffs from continuing to seek *nationwide* class certification but anticipated that the plaintiffs would continue to seek certification of *statewide* classes. See id., 766.

Second, as we noted previously in this opinion, we recognized in *Rivera* that a trial court may revisit the decision of whether to certify a class. *Rivera* v. *Veterans Memorial Medical Center,* supra, 262 Conn. 744. Thus, we fail to see how a court's denial of class certification would have preclusive effect over future attempts at class certification. The decision is a discretionary one that the trial court may choose to exercise at a future point, if it determines that the requirements of Practice Book §§ 9-7 and 9-8 have been satisfied.

those attendant to class member status. Rather, these benefits derive from judicial doctrines that were adopted to prevent the "frustrat[ion] of the principal function of a class suit"; *American Pipe & Construction Co.* v. *Utah*, 414 U.S. 538, 551, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974); namely, to prevent absent parties from having to file a proliferation of individual actions to protect their interests. These benefits arise upon the filing of a class complaint and operate to "freeze" the potential individual actions of those comprising the putative class. They are needed only for the time that it takes the trial court to assess the merits of the class certification request and to render its decision. Upon denial of class certification, the putative class members do not lose these benefits, but, rather, the function that they were adopted to serve is fulfilled, and putative class members are free to file their own lawsuits or to seek to intervene in the named plaintiff's ongoing litigation.

We conclude that an order denying class certification is not a final judgment and does not meet either prong of the *Curcio* test for appealability of an otherwise interlocutory order.[17] The Appellate Court properly dismissed the plaintiffs' appeal for lack of a final judgment.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

---

[17] Other states also have addressed this issue. See *Millett* v. *Atlantic Richfield Co.*, 760 A.2d 250, 254–55 & n.4 (Me. 2000) (summarizing state rulings and concluding that "[t]he majority rule is that denials of class certification orders are interlocutory orders and are not immediately appealable in the absence of a state statute or rule either expressly authorizing appeals from class certification orders or generally authorizing appeals from interlocutory orders"); see also *Gordon* v. *Microsoft Corp.*, 645 N.W.2d 393, 402–403 (Minn. 2002) (recognizing no right to appeal from denials of class certification absent rule permitting discretionary review).